10479

THE STATE v. BRAMLETT.

(103 S. E. 755.)

1. CRIMINAL LAW—CONVICTION NOT SET ASIDE BECAUSE DEFENDANT LEFT COURT ROOM FOR A MOMENT.—A conviction will not be set aside because while a witness was testifying defendant left the Court room for a moment, where defendant's counsel was advised of the fact and the matter was not called to the attention of the Court until after verdict, for defendant was in nowise deprived of his right to be present at every stage of the trial.

2. CRIMINAL LAW—REFUSAL TO ALLOW DEFENDANT'S COUNSEL TO SHOW DIAGRAM HELD ERROR.—Where the defense was insanity and defendant's counsel prepared a diagram showing the number and relationship of his relatives who had committed suicide or who had become insane, the refusal of the Court to allow the use of the diagram in argument, evidence as to insanity in defendant's family having been introduced though nothing having been given to the effect that the diagram was correct, was error, being unwarranted limitation on argument.

3. HOMICIDE—CHARGE ON PRESUMPTION OF INNOCENCE NOT MISLEADING. —A charge that the presumption of innocence remains with defendant until overcome by proof is not misleading, for while the presumption does extend throughout trial it is not conclusive.

4. HOMICIDE—CHARGE ON REASONABLE DOUBT NOT OBJECTIONABLE.—A charge that a reasonable doubt is one for which a reason could be given and does not mean a doubt which would arise in the mind of a man who was looking for a doubt, etc., *held* not erroneous.

5. CRIMINAL LAW — IMMUNITY THROUGH INSANITY DEPENDS ON WHETHER ACCUSED KNEW THE PARTICULAR ACT CHARGED WAS PUNISHABLE.—The test of insanity as affording immunity from punishment is whether accused knew that the particular act with which he was charged was punishable under the laws of the State.

6. CRIMINAL LAW—MODIFICATION OF CHARGE ON MALICE NOT ERROR.— Where the Court modified defendant's requested charge that if there was a reasonable doubt whether the act was the result of deliberation, forethought, and malice defendant could not be convicted of murder, by adding that if there was an absence of malice, and it appeared that defendant killed in sudden heat and passion, etc., the modification was not objectionable; the difference between finding the presence or absence of malice being immaterial.

7. HOMICIDE—INSTRUCTION AS TO KILLING MOTHER-IN-LAW AT HER HOME AFTER NOTICE TO STAY AWAY HELD CORRECT.—An instruction that if deceased, the mother-in-law of accused, notified him to stay away from her home where his wife and children were, and he went there despite such notice, he was a trespasser, and if he killed her under those conditions he was guilty of murder, was correct notwithstanding defendant's claim that his wife had a right to receive him, etc.

8. CRIMINAL LAW—INSTRUCTION ON EXPERT EVIDENCE CORRECT.—Where defendant relied on insanity, an instruction that the opinion of an expert is subject to the same rules and tests as other evidence and if the opinions were utterly at variance with facts established by unimpeached evidence the opinion should be disregarded is not objectionable, as practically telling the jury to believe the experts unless their testimony was contradicted by unimpeachable testimony.

9. CRIMINAL LAW—EXHORTATION TO JURY TO DO DUTY NOT ERRONEOUS. —In a homicide case, an exhortation to the jury to do their duty, and if proper to convict and if not acquit, was not erroneous.

10. CRIMINAL LAW—DOCTOR'S TESTIMONY AS TO INFORMING DEFENDANT'S FAMILY OF HIS INSANITY PROPERLY EXCLUDED.—Where the defense was insanity, testimony that a doctor before the crime informed defendant's family that he was crazy and should be "put up" was properly excluded.

11. WITNESSES—EXPERT CANNOT SUSTAIN OTHER EXPERT BY STATING HIS CONFIDENCE IN HIM.—Where insanity was a defense, one of defend-

ant's experts having stated that defendant's other expert was one of the best alienists in the country, a question as to his confidence in him was properly excluded.

12. CRIMINAL LAW—REBUTTING EVIDENCE AS TO REPUTATION OF FAMILY OF DEFENDANT FOR INSANITY PROPER.—Where defendant who relied on insanity showed the trait in his family, the State may introduce rebutting evidence as to the reputation of the family for insanity.

13. CRIMINAL LAW—RECORD OF ALIMONY PROCEEDINGS BETWEEN DEFENDANT AND HIS WIFE IMPROPER PREVENTING CONFRONTATION.—In a prosecution for the murder of his mother-in-law, where defendant introduced some affidavits offered in an alimony proceeding brought by his wife, the entire record, which contained the wife's verified complaint, was not admissible, though where one party introduces part of a record the other party ordinarily has the right to introduce the whole, for the introduction of such record would deprive defendant of the right given by Const. 1895, art. I, sec. 18, to confront witnesses.

14. WITNESSES—RECORD OF WIFE'S ALIMONY PROCEEDINGS CONTAINING HER COMPLAINT INADMISSIBLE AGAINST HUSBAND ON TRIAL FOR MURDER.—A wife is not a competent witness against her husband, and so in a homicide case, though the husband who had killed his mother-in-law introduced affidavits from the wife's alimony proceedings, the entire record containing her verified complaint should not be received.

Before PEURIFOY, J., Greenville, September, 1919. Reversed.

.Hugh T. Bramlett, indicted for the murder of Mrs. Lou C. McHugh. Upon conviction, defendant appeals.

*Messrs. Martin & Blythe,* for appellant, cite: *Defendant has the right to be present at every stage of his trial and cross-examination of witness in his absence was error:* 40 S. C. 368; 36 S. C. 511. *Being a part of the trial, there is a distinction between this case and 29 S. C. 232. Further authorities requiring presence of accused:* 146 U. S. 370; 36 L. Ed. 612; 110 U. S. 574; 28 L. Ed. 265; 16 Corp. J. 813. *And it makes no difference whether absence is voluntary or involuntary:* 53 Am. St. Rep. 248; 37 Fla. 162; 59 Am. Rep. 7; 90 Mo. 57; 95 Am. St. Rep. 474; 81 Miss. 391; 22 W. Va. 801. *Right cannot be waived in capital cases:* 16 Corp. Jur. 817; 47 Sou. 554 (Miss.); 20 L. R. A. 509;

62 S. E. 688; 19 L. R. A. (N. S.) 716; 67 S. E. 1001 (N. C.); 58 Sou. 7 (Miss.); 46 Kans. 318; 26 Pac. 754; 18 Penna. 105. *Presence of counsel in absence of defendant does not cure defect:* 38 Kans. 238; 16 Pac. 330. *Cases contra may be distinguished on different grounds:* (1) *Not capital felony cases;* (2) *showing of absence from Court not clear:* (42 Am. Rep. 270); (3) *nothing done "as part of trial" during absence:* (4) *nothing but preliminary or formal steps or motions:* (16 C. J. 815); (5) *objection not seasonably made:* (142 Ga. 741; 83 S. E. 645; L. R. A. 1915) 817; (6) *some statute regulates:* (7) *prisoner not in custody of the Court, out on bond and voluntarily absented himself when verdict received:* (129 N. W. 589; 32 L. R. A. (N. S.) 306.) *Error to exclude chart showing hereditary insanity in defendant's family during argument:* Const. 1895, art. I, sec. 18; 2 Enc. P. & P. 727; *Ibid.* 213-14. *Presumption of innocence is with defendant, and burden of proof is on the State until verdict is rendered:* 94 Pac. 179; 16 L. R. A. (N. S.) 263; Best on Ev., sec. 95; 12 Cyc. 379-80; 5 A. & E. Enc. Law, 33; 66 Mo. 181; 27 Am. Rep. 329, 332; 134 Pac. 77 (Okla.); 46 L. R. A. (N. S.) 1149; 55 Sou. 401. *Definition of "reasonable doubt:"* 91 S. C. 236; 49 S. C. 286; 18 S. C. 525; 5 Cush. 295; 52 Am. Dec. 711; 40 Ohio St. 371; 17 L. R. A. 710; 94 Pac. 179; 16 L. R. A. (N. S.) 260; 22 Neb. 519; 35 N. W. 405; 34 Neb. 236; 51 N. W. 837; 133 Ind. 677; 33 N. E. 681; 64 C. C. A. 525; 130 Fed. 279; 74 Am. St. Rep. (Iowa) 213; 78 N. W. 857; Brickwood Sackett Instructions to Juries (3d Ed.), sec. 4434, page 2890. *Provocation sufficient to warrant manslaughter verdict:* 50 S. C. 422; Wharton Hom., secs. 192, 297; 94 S. C. 117; 88 S. W. 341 (Tex.). *Jury were instructed that they must find that "malice was actually absent:"* 72 S. C. 201. *While drunkenness is no defense and would not of itself reduce murder to manslaughter* (*84 S. C. 533*) *where there was legal provocation sufficient*

*to reduce the crime to manslaughter, the fact that he was intoxicated is admissible as tending to prove that he acted under the provocation:* 21 Cyc. 675; 1 Spears L. 365; 36 N. Y. 116; 72 Am. Dec. 493; 8 Am. Rep. 470. *"Uncontrolable impulse" has its place in the law of manslaughter:* 50 S. C. 422. *Reference by the Judge to certain testimony of the State as "unimpeachable" was erroneous:* 8 Enc. P. & P. 774.; 11 Enc. P. & P. 330; 60 L. R. A. 795; Lawson on Expert and Opinion Evidence (2d Ed.) 181; 68 Pac. 828; 80 N. W. 495; 71 S. C. 145; 24 Pac. 888. *Defendant entitled to instruction as to his belief that his wife and children were wrongfully detained, whether it were true or not:* 92 Am. St. Rep. 241; 54 L. R. A. 780.

*Mr. J. Robert Martin, Solicitor,* for respondent, cites: *Direct evidence having been given, cross-examination was not such step in trial as it was necessary for defendant to be present:* 36 S. C. 511. *And a witness for defense:* Const. 1895, art. I, sec. 18. *And in the constructive presence of the Court:* 8 R. C. L. 91; 42 Am. Rep. 299. *In insanity cases where defendant is obstreperous, removal is permissible:* 8 R. C. L. 91; 16 C. J. 818. *Defendant waived right of presence:* 8 R. C. L. 89; 16 C. J. 818; 43 S. C. 57; 48 S. C. 3; 68 S. C. 428; 64 S. C. 206; 73 S. C. 320. *Counsel waived right of defendant's presence:* 8 R. C. L. 89; 16 R. C. L. 813. *U. S. Const. applies to prosecutions in Federal Courts only:* 16 C. J. 836; 8 R. C. L. 84; 129 Am. St. Rep. 28. *Diagram was offered without proof:* 16 C. J. 894; Jones Evid., par. 411. *Presumption of innocence until overcome by proof:* 18 S. C. 520; 8 R. C. L. 174; 16 C. J. 534; 88 S. C. 410. *"Reasonable doubt:"* 49 S. C. 297; 33 S. C. 135; 55 S. C. 33; 93 S. C. 514; 20 S. C. 453. *Test of mental capacity at time crime was committed:* 87 S. C. 414; 32 S. C. 202; 85 S. C. 76. *Temporary insanity, or uncontrollable impulse:* 84 S. C. 531; 12 Rich. 439; 18 S. C. 515; 1 Spear 391; 34 S. C. 131; 30 S. C. 83; 85 S. C. 76. *As*

*to weight of expert evidence:* 57 S. C. 407; 47 S. C. 57; 66 S. C. 35; 95 S. C. 441. *Charge on the duty of jury:* 108 S. C. 471; 27 S. C. 618; 88 S. C. 408. *No provocation short of personal violence at the time would reduce killing from murder to manslaughter; Courts were open for litigation over the possession of his children:* 38 S. C. 346; 32 S. C. 43; 34 S. C. 120. *Statement of Bramlett's prior condition irrelevant:* 90 S. C. 298; Underhill Crim. Ev., sec. 160. *General reputation for truth and veracity only admissible:* Jones Ev., sec. 860. *Hearsay as to pedigree:* Jones Ev., sec. 312.

July 26, 1920.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The appellant was tried and convicted of murder, for the killing of Mrs. Lou C. McHugh. The undisputed facts, as appear by the record, are:

"That on June 18, 1919, the defendant, in the city of Greenville, S. C., upon a much traveled street, Pendleton street, went upon the front porch of the residence of Mrs. Lou C. McHugh, who was his mother-in-law, and in open daylight shot her twice with a pistol, the wounds being sufficient to cause death, and they did cause death. One shot was in the right thigh, ranging upward, and the other in the back, ranging slightly upward."

The defendant was convicted of murder, from which he appealed. There are 25 exceptions, but we will adopt the grouping of the appellant in his argument.

1. During the trial, one of the constables, at the request of appellant, allowed the appellant to go out of the auditorium of the courthouse, where the trial was being held, into an adjoining room. The defendant was absent only a few minutes. During the defendant's absence a witness of the defendant was on the stand, and a

few questions were asked on the cross-examination. The defendant's counsel knew that the defendant had been absent, but did not call the attention of the Court to it until after the verdict. The absence of the defendant from the Court room during these few minutes is the error complained of in the first set of exceptions.

The exceptions that raise this question cannot be sustained. The defendant unquestionably has the right to be present at every stage of his trial. This right was not denied him. The constitutional right set up is to face the witnesses against him. The Court is satisfied that no unfair advantage was planned in this case, but to allow a defendant to make void a judgment against him by his own unlawful act, secretly performed during the trial, would be to make a mocking of judicial proceedings. The absence of the defendant was discovered in ample time to have remedied the defect, if his counsel had called attention to the fact when discovered, and it is now too late. There are decisions to the contrary, in other jurisdictions; but we will not follow them.

2. The next assignment of error is the refusal of the presiding Judge to allow the defendant's counsel to use a diagram prepared by him, in his argument before the jury.

One of the defenses was insanity. The witnesses for the defense testified to quite a number of cases of insanity and suicides on both sides of the defendant's family. The defendant's counsel prepared a diagram showing the number and relationship of the relatives of the defendant who had committed suicide and had become insane. There was no evidence to show that the diagram was correct, and the presiding Judge very properly ruled it out. There is no doubt as to the effectiveness of a diagram. The question was as to its accuracy. There was no opportunity to verify it. The right to use this diagram is akin to

the use of a photograph of the *locus* or a plat of land in argument that had not been proven in the case.

3. The next assignment of error is that his Honor charged the jury that the presumption of innocence remains with the defendant until it is overcome by proof, and should have charged that the presumption continued throughout the trial. The presumption does continue throughout the trial, as to every phase of it; but the presumption is not a conclusive presumption, and must give way to sufficient evidence. The charge was not misleading, and the exception cannot be sustained.

4. The next assignment of error is that his Honor charged that a reasonable doubt is a doubt for which you can give a reason. Exception 8 reads: "Because his Honor erred in charging: 'And a reasonable doubt * * * is just what the term implies, a doubt for which you can give a reason. It does not mean * * * a doubt which would arise in the mind of a man who was looking for a doubt, but it means such a doubt, Mr. Foreman and gentlemen, that would arise in the mind of an honest man who is earnestly seeking to know the truth, and, if in the consideration of this case there should arise in your mind such a doubt, it would be your duty under the law to give the defendant the benefit of it and acquit him.' "

His Honor explained a doubt for which you can give a reason as "such a doubt, Mr. Foreman and gentlemen, that would arise in the mind of an honest man who is earnestly seeking to know the truth, and, if in the consideration of this case there should arise in your minds such a doubt, it would be your duty under the law to give the defendant the benefit of it and acquit him." There was no error here.

5. The next error complained of is: "Did he know that the particular act with which he is charged is punishable under the laws of this State? Now, if he did, he is guilty."

The law of this State is stated as follows in *State v. Jackson*, 87 S. C., at pages 414, 415, 69 S. E., at page 886:

"Under the law of this State, the test is mental capacity or want of it sufficient to distinguish moral or legal right from moral or legal wrong, and recognize the particular act charged as morally or legally wrong."

The leading case on this subject is the case of *State v. Bundy*, 24 S. C. 439, 58 Am. Rep. 263. It has been reaffirmed in a number of cases. The test may not be the test of insanity in general, but it is unquestionably the test of that degree of insanity that affords immunity from punishment for crime. This exception cannot be sustained.

6. The tenth exception is: "Because his Honor erred in modifying the defendant's first request to charge, which reads: 'If, upon all the evidence in the case, there is a reasonable doubt in the minds of the jury whether the act was the result of deliberation or forethought and malice, or whether it was the result of heat and passion upon a sufficient legal provocation, the defendant could not be convicted of murder and should not be convicted of any offense higher than manslaughter.' Modified as follows: 'And I add that if you would find that there is the absence of malice, that he killed the deceased in sudden heat and passion upon sufficient legal provocation. If there is any doubt as to whether it is murder or manslaughter, you would give the defendant the benefit of the doubt and find him guilty of manslaughter.' "

The difference between the finding of the "absence of malice" and the "presence of malice" is highly technical and could not have influenced the verdict. This exception is overruled.

7. The twelfth exception is: "Because his Honor erred in charging substantially that if the jury should find that the

defendant had notice to stay away from the McHugh home and went there in spite of that notice, that he would be a trespasser and if he killed the deceased, under those conditions, he would be guilty of murder; whereas, in this case defendant's wife and children were making their home with Mrs. McHugh, and she had the legal right to receive him and he the right to call upon her pursuant to the agreement that he had had with her to take her and the children and go away from Greenville."

His Honor charged the jury practically that, if the defendant so conducted himself that his wife could not live with him in safety, and she took refuge with her mother, Mrs. McHugh, and Mrs. McHugh gave him notice not to enter upon her premises, then the defendant had no right to do so, but must pursue the peaceful methods provided by law. That is correct.

The fourteenth and fifteenth exceptions again refer to immunity from punishment for temporary or permanent mental disability. This has been considered.

8. The sixteenth exception is: "Because his Honor erred in charging: 'The opinion of an expert is evidence subject to the same rules and tests of other witnesses, and if you find expert evidence giving opinions utterly at variance with facts established by unimpeachable testimony, then such opinion would not avail the defendant.' "

Appellant cannot complain when his Honor practically told the jury to believe the experts, unless their testimony was contradicted by unimpeachable testimony.

9. The next exception complains of his Honor's exhortation to the jury to do their duty. His Honor said: "If it (your duty) is to convict him, you will convict him. If it is to turn him loose, you will turn him loose."

His Honor did not say or intimate what the duty was, and there is no error here.

10. The principles underlying the nineteenth exception have been considered. Dr. Mauldin testified that he had informed the family some time before the homicide that the defendant was crazy and should be "put up."

That testimony should have been received. It amounts to this:

"I examined the defendant some time before the homicide, and then warned the family that he was insane and dangerous."

It may have involved what the doctor said, but it included what he did. It involved the main point in the defendant's case, and the doctor's estimate of the obligation of his position as physician. I think the testimony should have been received, but the majority of this Court think it should not have been allowed.

11. One of the defendant's expert witnesses was Dr. Taylor, who did not live near the place of trial and was unknown to the jury. When Dr. Furman, who did live near the place of trial, and was presumed to be known by the jury, was on the stand, he was asked as to the reputation of Dr. Taylor as an expert on insanity. On the objection by the State the testimony was excluded. If Dr. Taylor's testimony had depended primarily on his veracity, there can be no doubt that his reputation for veracity could have been sustained by other witnesses. Here the value of Dr. Taylor's testimony primarily depended upon his ability as an expert, and I know of no reason why his reputation as an expert in mental diseases might not be sustained in the same way. The majority of the Court think otherwise.

The ordinary questions asked of a witness as to the character of another witness are: Do you know the reputation of this witness? Is it good or bad? From that reputation would you believe him on oath?

This exception is not sustained by the majority of this Court.

12. The State offered a witness named Rhodes, to testify as to the reputation in the family as to the sanuity of several members of the family, who, defendant's witnesses had said were insane. This was strictly in reply to the testimony of defendant's witnesses and in the same way, to wit, the reputation in the family. To this, under the circumstances, the appellant cannot complain, and this exception is overruled.

13. There had been alimony proceedings between Mr. and Mrs. Bramlett. The defendant had introduced some affidavits used in that case. The State offered the whole record, including the complaint, and affidavit of Mrs. Bramlett, in verification of it. To this the defendant objected. The introduction of the record was allowed on the ground that, as the defense had used a part of the record, the State was entitled to the whole record. There is a general rule that, when a part of a record is introduced by one side, it opens the way for the balance of the record by the opposite party. This rule is not universal nor absolute.

It is not necessary to discuss all of the limitations here. Any mere rule of evidence may be altered at any time by the Constitution of the State, or by statute not in conflict with the Constitution. The Constitution of this State (1895, art. I, sec. 18) gives to the accused the right "to be confronted with the witnesses against him." Mrs. Bramlett was not a witness for the State, and the defendant was not confronted with this witness. The violation of this constitutional right is clear and unmistakable. The affidavit introduced was the verification of the complaint in the usual form; she swore to the truth of the statements of her complaint. This complaint, of course, was signed and presumably drawn by her attorneys. The complaint contained

in part statements of fact, and in part conclusions of facts. Causes tried on affidavits alone are very unsatisfactory. It was impossible to exercise the right of cross-examination. It is equally clear that the testimony was incompetent on that account.

In addition to this, the statements in the record were introduced as the statements of Mrs. Bramlett, who was the wife of the defendant. The wife is not a competent witness against her husband. *State v. Workman,* 15 S. C. 540; *State v. Dodson,* 16 S. C. 453, and others.

The exception that raises this question is susained.

The judgment is reversed, and a new trial ordered.

MR. JUSTICE GAGE concurs.

MR. JUSTICE WATTS. I concur in the opinion of Mr. Justice Fraser, as to the admission of Dr. Mauldin's testimony and with that exception in Mr. Justice Hydrick's opinion.

MR. JUSTICE HYDRICK. I concur in the result. I think the Court erred in refusing to allow defendant's counsel to use the diagram prepared by them in argument to the jury. It was not evidence, and it was not sought to be used as evidence. It was merely a graphic illustration of the evidence as to insanity in the defendant's family, and in that way presented the view of the defendant's counsel as to the force and effect of the testimony and the inference which should be deduced from it. The reason may be reached and influenced through the eye as well as the ear, and it may be done more forcefully in the former than in the latter way in some circumstances. The denial of the right to present their argument to the jury in that way was the denial of the right to be fully heard in argument. It must not be inferred from this that this Court would infringe upon the discretion of the trial Court to prevent abuse of the privilege of legiti-

mate argument, and, standing alone, this error might not have been deemed sufficient to require reversal.

I do not agree that the statement of Dr. Mauldin to members of defendant's family as to his sanity was competent. I think it was incompetent, and properly excluded.

I think the ruling as to Dr. Furman's testimony was correct. He testified, without objection, that Dr. Taylor was one of the best alienists in the country. He was then asked as to his confidence in him. The answer was properly excluded. It was for the jury to decide what confidence or weight his testimony should have, without regard to Dr. Furman's opinion as to the weight it should have or the weight that he would give it, in the absence of any attack on Dr. Taylor's testimony.

MR. CHIEF JUSTICE GARY concurs.