21812

The STATE, Respondent v. Ronald Francis SMART, Appellant.
(299 S. E. (2d) 686)

*David I. Bruck, S. C. Com'n of Appellate Defense,* Columbia, *H. Patterson McWhirter,* Lexington, *William P. Walker,* Lexington, *for appellant.*

*Atty. Gen. Daniel R. McLeod, Sr. Asst. Atty. Gen. Brian P. Gibbes,* Columbia, *Sol. Donald V. Myers,* Lexington, *for respondent.*

November 23, 1982.

LEWIS, Chief Justice:

Appellant was found guilty of two murders while in the commission of larceny with use of a deadly weapon. He was sentenced to death for each offense. We affirm the convictions, vacate the sentences and remand for new trial thereof.

In vacating these sentences we are governed by our holding in *State v. Woomer*, S. C., 284 S. E. (2d) 357, that injection of the solicitor's personal opinion into jury deliberations on the death sentence is impermissible and requires reversal. In his closing argument at the sentencing trial, the solicitor three times made reference to his decision to seek the death penalty. Such reference could divert the attention of jurors from the evidence before them to an improper consideration of the solicitor's personal views. This case was tried before our ruling in *Woomer*, supra, hence we are confident that this problem will not arise again upon retrial. Appellant also takes exception to other aspects of the solicitor's closing argument. We address these exceptions by way of guidance on remand.

First, however, we consider the appellant's exceptions to his conviction trial. Three issues are presented: (1) refusal of the trial court to disqualify the solicitor's office from participation in the case; (2) physical absence of the defendant during certain portions of the proceedings; (3)alleged comment by the solicitor upon appellant's failure to personally testify at trial.

*Disqualification Motion:* By pretrial motion, appellant pointed out to the trial court that Mr. Dale DuTremble, an assistant solicitor in the Eleventh Judicial Circuit, had been employed by the Lexington County Public Defender's Office during the pendency of the charges against appellant. (A previous appeal, in part, delayed the ultimate trial. *State v. Smart*, 274 S. C. 303, 262 S. E. (2d) 911.) It was asserted that DuTremble had actively assisted appellant in preparation of his defense and that therefore his participation in prosecution of the case was a violation of canons of professional ethics requiring disqualification of the entire solicitor's office. The motion was denied.

Appellant now contends that denial of his motion amounted to violation of the Sixth and Eighth Amendments of the

United States Constitution, although he does not declare in what particulars. He appears to claim a denial of effective assistance of counsel upon the theory that the prosecutor improperly received information through a breach of the Code of Professional Responsibility and that the breach prejudicially compromised the defense. We acknowledge that the contention has merit in the abstract, even though we find, and appellant cites, no authority that treats the matter as one of constitutional import.

The absence of a constitutional grounding for appellant's contention is significant for two reasons. In the first place it leaves the matter to resolution by this Court on the basis of South Carolina law, consonant with the wide discretion accorded the trial judge in securing a fair and impartial trial. Secondly it places upon the moving party the burden of showing actual prejudice from the failure to disqualify. *State v. Goodwin*, 250 S. C. 403, 405, 158 S. E. (2d) 195.

Appellant urges that he should not be required to establish actual betrayal of specific secrets and confidences. He cites authority from certain jurisdictions to the effect that such a betrayal must be presumed from a mere allegation of successive adverse representation. In *People v. Shinkle*, 51 N. Y. (2d) 417, 434 N. Y. S. (2d) 918, 415 N. E. (2d) 909, for example, the court based disqualification of an entire prosecutor's office upon an appearance of impropriety notwithstanding clear evidence that no actual breach of confidence had occurred.

We find, however, that a substantial number of courts decline to adopt the presumption here urged. Annotations, 31 A.L.R. (3d) 953 (1970). These courts instead examine the circumstances of the particular case, making their determinations upon actual evidence that confidences have been breached. See also *Commonwealth v. Dunlap*, 474 Pa. 155, 377 A. (2d) 975. The basis for rejecting a rule of per se disqualification was well expressed by the dissenting opinion in Shinkle, supra. Objecting to the presumption of prejudice, Justice Jasen wrote that to adopt it would mean:

> ... a reasonable person would be required to conclude that lawyers, under any and all circumstances, cannot be trusted to maintain the confidences and secrets of their clients, even where, as here, they attest under oath to no breach of ethics. Implicit also in such reasoning is that

most, if not all, government lawyers cannot be trusted to discharge their public responsibilities faithfully. Implications such as these, in my view, are repugnant to the entire concept of the Code of Professional Responsibility adhered to by lawyers and should not be adopted by our court as the basis upon which a new per se rule of disqualification is announced. 415 N. E. (2d) 912.

We hold that the appellant was properly required to do more than allege a violation of ethical canons. Appellant contends that such a requirement created a dilemma, for to establish prejudice in support of his motion he would have been forced to reveal secrets to the trial court and prosecution. The argument has no merit, for in this case a circuit judge other than the trial judge was appointed to hear appellant's motion. Moreover, the use of ex parte hearings to establish a record in such cases is a well recognized technique available to any party in appellant's position. *First Wisconsin Mortgage Trust v. First Wisconsin Corporation,* 584 F. (2d) 201; "Developments in the Law-Conflicts of Interest," 94 Harvard Law Review 1244, 1333 (1981). Creating artificial dilemmas does not relieve appellant of his burden to show actual prejudice in this case. We approve the holding of the trial court that disqualification was not here required.

*In favorem vitae,* however, this Court has closely examined the record for any indication of prejudice to the appellant in the course of his trial. At the pretrial hearing, it was established that Mr. DuTremble had been assigned to prepare a brief submitted to this Court in *State v. Smart,* supra, while he was employed by the Lexington County Public Defender's Office. Under oath DuTremble specifically denied that he personally spoke with defendant at any time, that he discussed evidentiary matters or trial strategy with defendant's counsel, or that he in any way consulted appellant's case file. DuTremble's work for the prosecution in this case consisted of pretrial research upon a narrow question of law (that is, the admissibility of certain psychiatric evaluations). These facts do not suggest betrayal of any secrets or confidences.

Appellant was charged with the murders of four persons — a woman, two men, and a thirteen-year-old-girl. He was actually arrested at the scene of the crime within hours of the

killings. His clothing was soaked with blood of the victims. He violently resisted arrest, repeatedly shouting that "Red Dog" killed the victims and would kill the officers, too. It is admitted that "Red Dog" was appellant's own pseudonym. Every item of physical evidence was obtained at the scene in the course of routine investigation, with the exception of charts and courtroom visual aids. In short, the entirety of the State's case, its theory and evidence, rested upon the State's own resources, wholly apart from appellant or his counsel.

In his defense, appellant sought to demonstrate inconsistencies in the theory and evidence of the State. He also urged the jury to consider alternative explanations of the killings, including manslaughter, self-defense or actions by persons unknown. One item of defense evidence was a tape recording made by police of defendant's coversation with one officer while in custody on the morning of his arrest. At several points appellant is heard to say that one or both of the men killed the woman and child, while he escaped by killing the men. Elsewhere, it is suggested that the woman and child died accidentally as the three men fought. At still another point appellant refers to a fourth man, implying he had some role in the killings.

It is apparent that the jury weighed this evidence, for the verdict acquitted appellant in the deaths of the woman and child. In any event, the existence of the tape, its contents, and the defense theories suggested by it were in no way "secrets" or "confidences" of the appellant which attorney DuTremble could have "betrayed."

Appellant also offered testimony of a witness who was at the scene of the crimes up to a few hours before the killings. This testimony was at best confused and was little improved after the witness was declared hostile and defense counsel permitted to proceed accordingly. No allegation is made that the solicitor knew or otherwise improperly benefited from this testimony aside from its inherent weakness. Finally appellant offered testimony of an expert on gunshot residue. He had been summoned on short notice, hence his existence could not have been revealed to the solicitor through acts of DuTremble.

We conclude from a thorough review of this record that appellant had few, if any, "trump cards" to play. Even if he

had secrets and confidences which could have been shared with attorney DuTremble, they were not so revealed. Not even on this appeal has any specific item of information been brought to this Court's attention which could have affected the outcome of appellant's trial. Appellant cannot rely upon the mere fact of DuTremble's change of employment to establish prejudice. Denial of his motion for disqualification was altogether proper, and his exception thereto is without merit.

*Absence from the courtroom:* Jury selection in this case was conducted by a drawing of twelve or more names at random, which jurors were then examined by the court and counsel, presented and either struck or seated. After each list of twelve had been exhausted, a new list was drawn until a complete panel with alternates had been chosen. The physical drawing of names was accomplished by the Clerk of Court in the absence of appellant, all counsel and the trial court, evidently to insure that no one knew in advance the order of the draw. No objection was made to this procedure. It is clear that all participants understood and accepted this method.

Moreover, there is no right of defendant to be present when purely ministerial acts, preparatory to jury selection, are performed. Annotation, 26 A.L.R. (2d) 762, 770 (1952).

In any event, it must be shown that any error in the empanelling of the jury resulted in prejudice to appellant. Section 14-7-1140, South Carolina Code of Laws, 1976; *State v. Britt,* 237 S. C. 293, 117 S. E. (2d) 379; *State v. Livingston,* 233 S. C. 400, 105 S. E. (2d) 73. We are unable to discern any prejudice to the appellant occasioned by his absence during the simple drawing of names. None of the authorities relied upon by appellant are opposite, since none were cases in which direct *voir dire* by defense counsel was guaranteed as it was to this defendant under Section 16-3-20(D), Code. In the instant case, appellant did not exercise his full entitlement of peremptory challenges, from which it can be concluded that the jury panel was seated with his approval. See generally, *State v. Anderson,* 26 S. C. 599, 2 S. E. 699; *State v. Britt,* supra, 237 S. C. 293, 117 S. E. (2d) 379. We can discover no denial of effective representation under this exception.

Because of the lengthy and mostly superfluous *voir dire*

which occurred in this case, we consider it appropriate to offer guidance in this respect for the benefit of bench and bar. Section 16-3-20(D), Code, grants to a capital defendant the right to examine jurors through counsel. We so held in *State v. Smart,* supra. This section does not, however, enlarge the *scope* of *voir dire* as it is clearly delineated in Section 14-7-1020, Code. That provision permits trial court inquiry into the following matters:

> ... whether [a juror] is related to either party, has any interest in the cause, has expressed or formed any opinion or is sensible of any bias or prejudice therein...

The manner in which these questions are pursued and the scope of any *voir dire* beyond their bounds are matters of trial court discretion. *State v. Brown,* 274 S. C. 592, 266 S. E. (2d) 415; *State v. Neeley,* 271 S. C. 33, 37, 244 S. E. (2d) 522; *State v. Middleton,* 266 S. C. 251, 256, 222 S. E. (2d) 763.

In short, Section 16-3-20(D), Code, does not require the ■ trial judge to permit counsel to engage in lengthy interviews of prospective jurors. Nor does the language in Section 14-7-1020, Code, which entitles a party objecting to a juror to support the objection by "any other competent evidence." The evidence which the statute clearly contemplates is proof of bias or interest apart from *voir dire* responses and not statements or facts elicited in irrelevant inquiries.

In this case, jurors were asked about their families, ■ careers, church membership, hobbies, sports, favorite movies and television programs, their attitudes toward psychiatric medicine, their personal reactions to the defendant's appearance, and even their knowledge of the law (including the presumption of innocence) prior to instruction by the court. The following exchange between defense counsel and a female prospective juror is illustrative:

Q. Do you drink?
A. I would say I was a social drinker.
Q. Have you ever been drunk?
A. Yes.
Q. How drunk?
A. Drunk, drunk.

Q. Have you ever been drunk enough where you don't remember what happened?
A. No.
Q. Do you know people who have been that drunk?
A. Yes.
Q. Have you ever done things when you were drunk that you wouldn't have done when you were sober?

It is understandable that any trial counsel would desire to know as much as possible about potential jurors. It is evident that the trial court granted this defendant an extraordinary degree of freedom in acquiring such information. The function of *voir dire* examination, however, is to determine specific and real bias or interest in jurors and not to develop personality profiles. The capital defendant is clearly entitled to the former but has no claim of right to the latter. It is not an abuse of discretion for the trial court to limit *voir dire* accordingly.

The permission granted to the defendant by Code Section 16-3-20(D) to question jurors in a death case is not a license to forage at will over the private lives of jurors. Neither does this statutory provision lessen the *authority* and *duty* of the trial judge to restrict *voir dire* to the areas mentioned in Code Section 14-7-1020.

We suggest to trial judges that an examination of jurors by the court as directed by Code Section 14-7-1020, prior to their examination by counsel, could afford the basis for proper limitation of the questioning by counsel to relevant matters, if not the elimination of the necessity for further examination in certain areas.

The unbridled examination of jurors by counsel serves to not only unnecessarily add to the length and expense of the trial, but also serves to antagonize jurors and lessen public respect for jury duty. The extent to which *voir dire* examination is being permitted by trial judges causes this Court concern and, therefore, this admonition.

Appellant was physically absent from the courtroom on another later occasion, and on this appeal asserts invasion of his constitutional right to be present. During the second day of deliberations on guilt or innocence, the trial court received written inquiries from the jury with regard to earlier instruc-

tions on murder, manslaughter and self-defense and with regard to the need for unanimity on each verdict. These matters were discussed between the court and counsel and written responses supplied to the jury in the appellant's absence.

It is contended that such facts raise a presumption of prejudice relieving the appellant of the burden to make any further showing. Heavy reliance is placed upon the language of *State v. James*, 116 S. C. 243, 107 S. E. 907, a 1921 decision of this Court in which reversal was granted upon the principle that the accused has a right to be present at every part of the *trial proper* "to hear the Judge's charge, to see, know, and hear what the Judge says when he communicates with the jury, in answering their questions or further instructing them...." 116 S. C. at 246, 107 S. E. 907.

We note at the outset several factual differences between *James, supra,* and the instant case. In *James, supra,* the jury came into the courtroom to request further instruction and received this additional instruction orally from the judge. No record was made of this colloquy, and only later did the trial judge state to the stenographer the instructions he had given. In the present case, the communication was in writing and has been preserved, a fact which is a point of distinction among cases that deal with absence of an accused. 94 A.L.R. (2d) 270. Furthermore, defense counsel in *James, supra,* brought the matter to the trial court's attention by motion for new trial, thus affording the court an opportunity to consider its error. No such objection or motion was ever made in the instant case, a fact which would normally require this Court to dismiss the question altogether.

*State v. James, supra,* did not establish a presumption of prejudice from the absence of an accused as here occurred. Nor do our subsequent holdings give rise to such a presumption.

We acknowledge that authority exists for the proposition advanced by the appellant. The view he takes is by no means universal, and at least one court has found the "modern trend" to be away from broad and sweeping presumptions to a particularized examination of prejudice in the individual case. *State v. Schifsky,* 243 Minn. 533, 69 N. W. (2d) 89. We find this approach persuasive and review the record accordingly.

In response to the jury inquiry, the trial court submitted in writing a restatement of its earlier oral charge and in a separate note informed the jury that unanimity on each count of the indictment was required, the verdict on one count not to affect the verdict on the others. We find no prejudice in the content of these messages and conclude that appellant's exception here lacks merit.

There did appear, however, one discrepancy between the written message of the court and its earlier oral instruction. The written message contained approximately one paragraph relating to an element of self-defense, specifically the relationship between use of deadly force by a defendant against an assailant armed with less than lethal means. The charge need not be quoted here, but it clearly stated a correct principle of law. Quite properly counsel took no exception. More important, however, is the fact that the additional charge extended the protection of self-defense to a lethally armed defendant confronted with more than one assailant who may be unarmed. At least one version of appellant's case involved simultaneous attack by the two male victims, one or both of whom had guns.

His expert witness testified that the victims had fired or handled guns before their deaths. To the extent the jury may have believed appellant's evidence, it appears that the additional charge worked no prejudice upon him but may have temporarily drawn attention to the stronger points of his case.

This Court recognizes that the better practice would be to have the defendant present in the courtroom at such times as this. We do not, however, hold that prejudice should be presumed without some showing. We are even less inclined to do so given the circumstances of this trial, for the record reveals that appellant escaped from custody during the trial, taking hostages and threatening to kill them. Had his efforts succeeded, he would have been very much absent from any further proceedings. *State v. Bramlett*, 114 S. C. 389, 103 S. E. 755. Moreover the extreme security required thereafter in the courtroom was augmented in the sentencing phase as a result of threats to the life of the solicitor and his family. It is not surprising that procuring defendant's presence was not a burning concern to the court or even defense counsel. It is

proper, therefore, to require some evidence of prejudice rather than grant reversal based upon a presumption that is far from being universally held.

*Solicitor's Arguments:* During the guilt phase of the trial, the solicitor remarked that certain evidence of the State had not been contradicted and that the defendant appeared less than zealous in seeking to reveal the truth. These remarks are here interpreted by appellant as addressed to his failure to assume the witness stand. We cannot agree with this interpretation. By the device of his tape-recorded statement, the appellant through his own words put before the jury several alternative versions of the killings. He never denied being present at the scene nor participating in some of the violence and his statement itself invited speculation as to other knowledge he might have about the crime. With the appellant's own words in evidence, it was by no means improper for the solicitor to question their veracity and to direct the jury's attention to actual evidence already admitted which appellant in his statement seemed to disregard or implicitly refute. We find no prejudice in these arguments, noting that trial counsel properly raised no objection either.

During the sentencing trial, the solicitor, as indicated above, improperly drew attention to his own decision to seek the death penalty. His argument also touched upon other considerations not appropriate for deliberations in a capital case. Referring to appellant's escape, the solicitor urged that law officers who risked their lives in his recapture would be aggrieved by a sentence less than death. In like manner, the solicitor implied that other citizens of Lexington County including himself would strongly disapprove of a life sentence. Speaking more broadly still, he opined that the death penalty statute might be ripe for repeal if a mere life sentence were returned in this case.

While this Court approves zealous representation by counsel both for the State and the accused, it is important in capital cases to maintain strict focus upon the particular circumstances of the specific crime and the unique attributes of the defendant. Jurors are simply not to consider the opinions of neighbors, officials or even other juries. In like manner, legislative determinations are wholly beyond the proper concern of a jury as it weighs the sentence of death. Capital

sentencing is a process specific to the crime and the defendant, and we admonish bench and bar to be guided by this limitation.

Remaining exceptions are rendered moot by our remand.

The conviction is affirmed, sentence of death vacated and case is remanded for new trial as to sentence.

NESS, GREGORY and HARWELL, JJ., and JAMES E. MOORE, Acting Associate Justice, concur.