STATE OF NORTH CAROLINA v. CHARLES SUMMERS, JR.

No. 33

(Filed 12 December 1973)

1. Burglary and Unlawful Breakings § 4— first degree burglary — evidence properly excluded

In a prosecution for first degree burglary the trial court did not err in failing to require the prosecuting witness to answer that she had had her husband convicted three or four times for assaulting her.

2. Criminal Law § 102— jury argument of solicitor — no impropriety

The solicitor's remark during his argument to the jury that the grand jury had seen fit to indict defendant was not improper and defendant's motion for a new trial based thereon was properly overruled.

3. Burglary and Unlawful Breakings § 5— first degree burglary — sufficiency of evidence

Evidence in a first degree burglary case was sufficient to be submitted to the jury where it tended to show a breaking into a closed and occupied dwelling house in the nighttime for the purpose of committing rape, the victim recognized the intruder by his voice and identified defendant, defendant's fingerprints were found on a metal spray container which the intruder had used as a weapon to inflict injuries on the head and face of the victim, and when the victim screamed, arousing her daughter, defendant fled the scene.

4. Burglary and Unlawful Breakings § 8— first degree burglary — sentence of forty years imprisonment — error

The only permissible sentence for first degree burglary committed on 5 August 1972, after the date of *Furman v. Georgia*, was life imprisonment, and the trial court erred in imposing a sentence of forty years imprisonment on defendant.

IN this criminal prosecution the defendant was tried before *Cooper, J.,* at the November, 1972 Session, ALAMANCE Superior Court, upon a grand jury indictment, proper in form, which charged that Charles Summers, Jr. at about the hour of 1:30 a.m. on the night of August 5, 1972, feloniously and burglariously broke into and entered the dwelling house occupied by Carol Brooks and her two infant daughters with the intent to commit rape upon Carol Brooks. When arraigned, the defendant entered a plea of not guilty. A jury, satisfactory to both the State and the defendant, was selected and empaneled.

At the trial, Mrs. Carol Brooks testified that she and her two children went to bed upstairs in their apartment at 9:30 p.m. on August 5, 1972. The apartment in which they lived was owned by the Burlington Housing Authority. Before going to bed Mrs. Brooks locked the windows and doors to the apartment.

Some time later in the night she was awakened by a person on her bed attempting to remove her sleeping garment. When she screamed the intruder spoke to her, using words not necessary to be repeated here. She recognized the intruder's voice and thereby identified the defendant as the intruder. She had heard him talk and she knew his voice. She began screaming and the intruder held her and began hitting her on the head and face with a metal object. The older daughter, age seven, awoke and began screaming. At this juncture the intruder fled from the apartment.

Neighbors testified as to the outcry for help and Mrs. Brooks' excitement and distress.

Police Officer Elgin arrived and testified the time was 1:50 a.m. and that he ascertained that a window and a door to the apartment had been opened. Officer Elgin examined the apartment and found a metal hair spray container near Mrs. Brooks' bed. This appeared to be the weapon used in the attack on Mrs. Brooks. Microscopic and fingerprint examination of the container disclosed the clear fingerprints of the defendant.

The defendant did not testify and did not offer evidence. The court denied defendant's motions for a directed verdict of not guilty made at the close of the State's evidence and renewed after the defendant rested without offering evidence.

The jury returned this verdict: "Guilty of First Degree Burglary." The court imposed a sentence of forty years' imprisonment. The defendant moved to set aside the verdict on account of the solicitor's remarks during his argument to the jury: "That the grand jury for Alamance County had considered the charge against the defendant and had seen fit to indict him thereupon."

The defendant filed exceptions to the judge's refusal to permit his counsel to inquire of the prosecuting witness how many times she had filed charges in court against her husband for assaulting her. Her reply would have been, "Three or four times." These questions came during a protracted cross-examination involving matters beyond the scope of pertinent inquiry, involving matters not touching on the defendant's guilt or innocence, nor reflecting on the character of the prosecuting witness.

After the verdict was returned and the judgment entered, the defendant gave notice of appeal to the Court of Appeals. The defendant's brief contains the following:

> "In Group VII of the Assignments of Error, the defendant objected and excepted to the form of the judgment entered by the court upon the jury's verdict. The jury found the defendant 'Guilty as charged,' namely guilty of the capital crime of First Degree Burglary. The court, in the wake of such verdict, sentenced the defendant to a term of forty years in the State's Prison. Whether such a sentence is proper, in the state of the law at this time, defendant will submit into the hands of the court, without argument."

The parties agreed on the statement of the case on appeal which was filed in the Court of Appeals. The Attorney General, on behalf of the State, filed a petition with the Supreme Court pursuant to G.S. 7A-27 requesting that the case be transferred to this Court prior to review by the Court of Appeals. The motion was allowed and the transfer ordered on June 7, 1973.

*Robert Morgan, Attorney General by Lester V. Chalmers, Jr., Assistant Attorney General for the State.*

*Herman L. Taylor for the defendant.*

HIGGINS, Justice.

[1, 2] The defendant assigns as error the failure of the court to require Mrs. Brooks to answer this question: "How many

times have you had your husband convicted of assaulting you?" If required to answer, she would have said, "Three or four times." In sustaining the solicitor's objection to the inquiry, the trial judge evidently concluded the question would raise other questions and would tend to lead the jury into a consideration of issues not pertinent to the burglary charge. Because of his favorable position and his wide discretion in controlling the scope of cross-examination in criminal cases, the ruling of the trial judge should not be disturbed except when prejudicial error is disclosed. *State v. Robinson,* 280 N.C. 718, 187 S.E. 2d 20; *State v. Ross,* 275 N.C. 550, 169 S.E. 2d 875. Error prejudicial to the defendant does not appear. Likewise, the court did not commit error in sustaining the objection to the solicitor's argument. The solicitor merely stated that the grand jury had seen fit to indict the defendant. The court made the same statement in informing the jury as to the nature of the charge. The argument does not seem to be improper and the motion for a new trial based thereon was properly overruled.

[3] The defendant's motions to dismiss for insufficient evidence were properly denied. The State's evidence disclosed a breaking into of a closed and occupied dwelling house in the nighttime for the purpose of comitting rape. Mrs. Brooks recognized the intruder by his voice and identified the defendant. His fingerprints were found on the metal spray container which the evidence disclosed the intruder had used as a weapon to inflict injuries on the head and face of Mrs. Brooks. When she screamed, arousing her daughter, the defendant fled the scene.

The defense offered nothing in contradiction except an extensive cross-examination which the court had, with difficulty, kept within bounds. Motions to dismiss were properly overruled. The State had made out a case for the jury. *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679; *State v. Rowland,* 263 N.C. 353, 139 S.E. 2d 661; *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431.

The defendant objected to the charge on the ground of imbalance in the court's statements of the contentions. The court's charge, when examined in context, seems to be fair and in balance. The defendant should have made objection before the jury retired if he was dissatisfied with the statement of his contentions. *State v. Lambe,* 232 N.C. 570, 61 S.E. 2d 608; *State v. Thompson,* 226 N.C. 651, 39 S.E. 2d 823.

[4]　We conclude the trial and verdict are free from legal objection. However, the judgment imposed was unauthorized by applicable law. "G.S. 14-52. *Punishment for burglary.*—Any person convicted, according to due course of law, of the crime of burglary in the first degree shall suffer death: Provided, if the jury when rendering its verdict in open court shall so recommend, the punishment shall be imprisonment for life in the State's prison, and the court shall so instruct the jury."

On June 29, 1972, the Supreme Court of the United States decided *Furman v. Georgia,* 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726. Furman was under a death sentence in Georgia for murder. He filed in the Supreme Court of the United States a petition for certiorari. Two other persons under death sentences, one in Georgia and one in Texas, filed like petitions. "Certiorari was granted limited to the following question: 'Does the imposition and carrying out of the death penalty in [these cases] constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments?' 403 U.S. 952 (1971). The Court holds that the imposition and carrying out of the death penalty in these cases constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. The judgment in each case is therefore reversed insofar as it leaves undisturbed the death sentence imposed, and the cases are remanded for further proceedings. So ordered."

The Per Curiam decision in Furman above quoted does not specify the legal reasoning which influenced the Court to invalidate the death sentences. From the individual opinions of the Justices, however, it appears a majority of the Court held the view that a death sentence is cruel and unusual punishment if the statute under which it was imposed gave to the judge or to the jury the option to fix the punishment at death or life imprisonment.

Since the decision in Furman, the Supreme Court of the United States has allowed certiorari to this Court, vacated death sentences, and remanded the cases to us for further proceedings. Our procedure has been to remand each case to the trial court for the imposition of a life sentence. In some instances, the trial judge upon a conviction of a capital felony without a jury recommendation of life imprisonment, has imposed a life sentence. Of course, the trial courts are, as this Court is, bound by the decision in Furman. *State v. Hill,* 279 N.C. 371, 183 S.E. 2d 97;

*State v. Roseboro*, 279 N.C. 391, 183 S.E. 2d 108; *State v. Atkinson*, 279 N.C. 386, 183 S.E. 2d 106; *State v. Chance*, 281 N.C. 746, 191 S.E. 2d 65; *State v. Doss*, 281 N.C. 751, 191 S.E. 2d 70; *State v. Miller*, 281 N.C. 740, 190 S.E. 2d 841; *State v. Westbrook*, 281 N.C. 748, 191 S.E. 2d 68.

The only sentence the trial judge was authorized to impose on the defendant for the crime he committed on August 5, 1972, was imprisonment for life. *State v. Waddell*, 282 N.C. 431, 194 S.E. 2d 19.

Under the authority of the cases herein cited, we vacate the sentence of forty years' imprisonment imposed on the defendant, remand the case to the Superior Court of Alamance County to the end that the presiding judge, by proper writ, shall have the defendant and his counsel of record brought before the court, and the court shall enter judgment that the defendant be confined in the State's prison for the term of his natural life.

REMANDED FOR JUDGMENT.