Bonnie S. HOLDER, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 72S04–9105–CR–421.

Supreme Court of Indiana.

May 30, 1991.

Ralph E. Randall, Scottsburg, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, Roger L. Duvall, Pros. Atty., Scottsburg, for appellee.

SHEPARD, Chief Justice.

A jury found Bonnie S. Holder guilty of voluntary manslaughter, a class A felony, Ind.Code § 35–42–1–3 (West Supp.1990). The trial court entered judgment on the verdict and sentenced her to twenty years in prison. The Court of Appeals reversed and remanded for a new trial. *Holder v. State*, No. 72A04–8910–CR–452 (Ind.App. October 30, 1990). We grant transfer and affirm the trial court.

Holder's appeal presents five issues:

1. Whether the evidence was sufficient to support Holder's conviction in light of her self-defense claim;

2. Whether the trial court improperly excluded certain evidence of the victim's character;

3. Whether the prosecutor improperly called himself as a witness;

4. Whether the State failed to preserve exculpatory evidence; and,

5. Whether the trial court erred in instructing the jury.

The evidence most favorable to the jury's verdict shows that shortly after midnight on October 19, 1988, an intoxicated Brian Todd Westmoreland arrived at Bonnie Holder's home honking the horn of his truck. After parking his truck in the street in front of Holder's house, Westmoreland proceeded to the front door and began pounding on it. He repeatedly demanded that Holder open the door. He also called for Denise Kniep to come outside; she was Holder's daughter and the mother of Westmoreland's child.

Holder and her daughter eventually went outside, and Holder and Westmoreland began arguing. Several neighbors heard Holder shouting for Westmoreland to leave and Westmoreland shouting back. Brad Barnett, a neighbor watching from across the street, saw Westmoreland and Holder swinging their arms around at each other. Barnett was unsure whether or not he saw Westmoreland hit Holder. Brad's wife, Lana Barnett, was also watching from across the street. About twenty minutes after the argument began, she heard Holder threaten to shoot Westmoreland if he did not leave. Westmoreland told Holder that she would not shoot him, and they continued to argue. Westmoreland finally turned to return to his truck. While he had his hand on the door of his truck, Holder shot him in the back. He climbed into his truck and slumped over the steering wheel, dead. The coroner reported that

Westmoreland died from a single gunshot wound, with the fatal bullet entering the left side of his back.

## I. Sufficiency of the Evidence

Holder argues that the prosecution failed to present evidence sufficient to rebut her self-defense claim. "A valid claim of self-defense is legal justification for an otherwise criminal act." *Martin v. State* (1987), Ind., 512 N.E.2d 850, 851.

When reviewing the sufficiency of the evidence, this Court does not reweigh the evidence or judge the credibility of witnesses. We look to the evidence and reasonable inferences therefrom which support the verdict. The conviction will be affirmed if there is evidence of probative value from which a reasonable trier of fact could infer guilt beyond a reasonable doubt. *Stwalley v. State* (1989), Ind., 534 N.E.2d 229.

To prevail on a claim of self-defense in a homicide prosecution, the defendant must show that she was in a place where she had a right to be, that she acted without fault, and that she had a reasonable fear of death or great bodily harm. *Martin*, 512 N.E.2d at 851. Once the defendant raises the issue of self-defense, the State bears the burden of disproving the existence of one of the elements of self-defense. *Id.* One way the State may meet this burden is by presenting evidence sufficient to convince a reasonable juror beyond a reasonable doubt that the defendant, in light of all the circumstances known to her, could not have entertained a bona fide belief she was in danger of death or great bodily harm. *Id.*

Holder's defense rested on the theory that Westmoreland was extremely violent, aggressive, and frightening to her. She testified that Westmoreland hit her, knocked her to the ground, pulled her hair, beat her daughter's head against his truck repeatedly, and then turned back on Holder after she called for him to leave her daugh-

ter alone. According to Holder's testimony, when Westmoreland turned back on her she fired a warning shot causing Westmoreland to back away. As Westmoreland backed off, he looked at her, swore at her, and then came at her again, prompting her to shoot him in self-defense. Finally, Holder testified that Westmoreland must have turned just as she shot because she did not intend to shoot him in the back.

Although Holder and her daughter had injuries somewhat consistent with Holder's testimony,[1] none of the other eyewitnesses supported Holder's assertion that Westmoreland was coming at her when she shot him. Brad and Lana Barnett saw Westmoreland by his truck when Holder shot him. Lana testified, "He was facing his truck with his hand on the truck door like he was going to get in." Record at 405. Brad testified that Westmoreland was "either going to get something out of his truck or gettin' in his truck." Record at 426. In addition, the coroner reported that Westmoreland was shot in the back. Record at 315–16. This evidence is sufficient to support the instruction given by the trial court. Even her daughter testified that she was looking at her mother rather than Westmoreland when the fatal shot was fired, making it impossible for her to know from her own observations whether or not he was trying to get into his truck. Record at 451–52.

The evidence presented at trial was sufficient to convince a reasonable juror beyond a reasonable doubt that Holder could not have had a bona fide belief that she was in danger of death or great bodily harm when she shot Westmoreland.

## II. Evidence of Victim's Character

Holder argues that the trial court improperly excluded certain testimony concerning Westmoreland's character. Proof of a homicide victim's character is generally prohibited. *Phillips v. State* (1990), Ind., 550 N.E.2d 1290. If a defendant raises a self-defense claim, however, an excep-

---

1. Holder suffered from bruises on the right side of her face and the upper portion of her left arm. Her daughter suffered from a cut and bruise on her neck and swelling in both the front and the back of her scalp. Record at 386–88.

tion is made. Evidence of the victim's character may be admitted for either of two distinct purposes: to show that the victim had a violent character giving the defendant reason to fear him or to show that the victim was the initial aggressor. *Id.*

[10–13] Evidence of specific bad acts is admissible to prove that the victim had a violent character which frightened the defendant. *Id.* However, only general reputation evidence of the victim's violent nature is admissible to prove that the victim was the initial aggressor. *Norris v. State* (1986), Ind., 498 N.E.2d 1203, 1205. If the defendant wishes to introduce either type of character evidence, she must first introduce appreciable evidence of the victim's aggression to substantiate the self-defense claim. *Phillips,* 550 N.E.2d at 1297. When offering specific bad acts evidence to prove the victim's violent character frightened her, the defendant must also provide a foundation showing that she knew about the specific bad acts in question before she killed the defendant. *Id.*

■ Holder claims that she was denied the due process of law as a result of the following exchange during the examination of her daughter, Denise Kniep:

Q879 Did Todd have a temper?

BY ROGER DUVALL [Prosecutor]: Objection, I don't think that is relevant.

BY RALPH RANDALL [Defense Counsel]: Your honor it is certainly relevant to an altercation such as this, one of the elements here is whether my client acted under heat, one of the elements of self defense is whether my client was scared.

BY ROGER DUVALL: And if he wishes to try and establish fear on the part of Bonnie Holder, your honor, he must do it through her and not another witness.

BY THE COURT: I'll sustain the objection.

Record at 441–42.

To establish that Holder feared the deceased, she was entitled to introduce evidence of acts of violence of which she was aware. The question posed to Kniep did not request information of this sort, and

the objection to it was properly sustained. Proper evidence was later placed before the jury during Holder's own testimony:

Q1084 Do you know of a specific instance where Todd had exhibited an act of violence towards you?

A Yes he has gotten angry with me before, he has put his finger in my face and started screamin' at me and told me just to, you know, back off and over at T & T when we lived in that little house there and he tried to break in the backdoor that one day or one night and he was going around lookin'—Denise was inside and she wouldn't talk to him, they were havin' a fight and uh he tried to break in the back door that night and he couldn't get in but he did bust the bottom of the door and then he went around and he was lookin' in the windows tryin' to talk to Denise or see Denise or whatever and I told him that night he better leave or I was going to call the police; well I thought about it, I really didn't want to call the police on him so when I didn't see him out there I went next door to T & T Video and used their phone and I called his father up and told his dad he better come get him or I was going to call the police.

Record at 474–75. In sum, the exclusion of Kniep's testimony did not deprive Holder of the due process of law.

### III. The Prosecutor as Witness

Holder asserts that she was denied a fair trial when the prosecutor took the stand as a rebuttal witness. The topic was a statement the prosecutor made at the police station.

During her own testimony, Holder recited the prosecutor's statements this way:

Q1060 What, if anything, did the police officer tell you?

A Uh, I kept askin' them if I needed a lawyer and they said that they didn't figure I really did and uh they was tapin' some of this stuff down even uh Mr. Duvall [the prosecutor] he come in and he was sittin' there and I was cryin' and pretty upset and he put his hand on my arm and told me that, uh, he said calm

down, there was an Indiana State Law that says that or the self defense law for you to protect your family and yourself. Q1061 The prosecutor said this?

A Yes sir.

Record at 470.

During the State's rebuttal, the prosecutor testified in narrative form:

The recollection of the events of that evening are such that there is an understanding with all the Scott County Police Officers that whenever there is a death of any type either the prosecuting attorney or the deputy prosecuting attorney are to be contacted. Now I received a call from the Scott City Police indicating that they had a death, a shooting, I was not informed at the time the call came to my home who was involved, I went to the Scottsburg City Police Department, at the time of my arrival at the police department Bonnie Holder, Denise Kniep and Brian Kniep were already at the station and questioning of Bonnie Holder had already commenced. I went into Chief Meeks' office where the questioning was under way by Officer Amick, the only questioning that I conducted that morning was I asked Denise 2 or 3 questions at the end of her statement; I make it a procedure not to ask questions of witnesses simply to avoid this type of situation; Mrs. Holder that evening was very upset her statement in that regard is correct, she was crying I think she kept repeating that she had to do it or it was in self defense and I am certain that someone, I don't know whether it was myself or one of the officers did indicate to her that there is a self defense law in Indiana, it is not my recollection that anyone indicated to her that there was no culpability on her part I think the indication was very clear that there would have to be some investigation. Your witness, Mr. Randall.

Record at 487–88.

■ Defense counsel did not object to the prosecutor's testimony, nor did he cross-examine the prosecutor. Record at 486, 488. The failure to object at trial presents no error for appellate review. *Whittle v. State* (1989), Ind., 542 N.E.2d 981, 990.[2]

## IV. Preservation of Exculpatory Evidence

Holder claims that the State failed to collect and preserve exculpatory evidence including the clothing she was wearing during the incident, hair that Westmoreland allegedly pulled from her head, photos of Holder on the night of the shooting, and information about lighting at the crime scene.

■ This Court follows the United States Supreme Court's decision in *California v. Trombetta* to determine the scope of the prosecutor's duty to preserve exculpatory evidence:

Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

467 U.S. 479, 488–89, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984) (footnote and citation omitted); *see also Kindred v. State* (1988), Ind., 524 N.E.2d 279, 299. The facts of this case meet neither of these conditions.

■ Holder first complains that the State failed to seize and preserve the nightgown she was wearing on the night of the crime. Two of the investigating officers testified that Holder was wearing a nightgown when they arrived at her home after the shooting. One officer testified that Holder's gown was not ripped and that he did not seize it. The other testified that when he returned to Holder's home in the

---

**2.** Counsel on appeal argues that this modest statement, barely in the nature of rebuttal, was fundamental error. It was not.

early morning hours of October 20 to secure any additional evidence, Holder gave him a nightgown and told him it belonged to Denise Kniep. That nightgown was introduced as evidence at trial through the police officer's testimony. Denise testified that she was wearing it when the incident occurred and that Westmoreland ripped it while they were fighting in the yard. There was nothing to prevent Holder from (1) giving the police officer her own gown when she gave him Denise's and then producing it through him at trial, or (2) introducing it as her own exhibit.

Next, Holder complains that the State failed to preserve hair that Westmoreland pulled from her head. The officer who returned to the scene to collect evidence testified that Holder gave him the hair and told him that Westmoreland had laid her down and pulled it out. The officer also testified that he did not preserve the hair. The evidentiary value of the hair was questionable. None of the independent witnesses saw Westmoreland pull Holder's hair. Holder and Denise Kniep had the opportunity to testify that he did so. The hair itself, procured from Holder the day after the crime, would have been a marginal addition.

Finally, Holder's arguments that the police failed to photograph her and collect information about lighting at the scene of the crime are without merit. Even if such evidence would have been exculpatory, Holder clearly could have obtained it herself through reasonably available means.

### IV. Jury Instructions

Holder argues that the trial court erred in refusing two of her tendered jury instructions and in giving one of the instructions tendered by the State.

We turn first to the trial court's refusal to give Holder's tendered instructions, one on reckless homicide as a lesser included offense of voluntary manslaughter and one defining the term "included offense."

We apply a two-step test to determine whether the trial court should have given an instruction on a lesser included offense. First, we determine whether the claimed lesser offense is either inherently or factually included in the language of the statute and the charging document. Second, we examine the evidence to determine whether it warranted an instruction on the lesser offense. An instruction on the lesser offense was warranted if a serious evidentiary dispute existed respecting the element that distinguishes the greater from the lesser offense. *Ingram v. State* (1989), Ind., 547 N.E.2d 823.

Holder's tender of an instruction on reckless homicide fails the second component of the test. The factor distinguishing reckless homicide from voluntary manslaughter is the requisite mens rea, reckless rather than knowing or intentional conduct. *Compare* Ind.Code § 35–42–1–3 (West Supp.1990) (voluntary manslaughter) *with* Ind.Code § 35–42–1–5 (West 1986) (reckless homicide). The evidence reflects no recklessness on Holder's part. Indeed, Holder testified:

> [Todd] kept smashin' [Denise's] head over and over again, she broke loose and I screamed at Todd, Todd came at me, I put the gun up and I fired a shot, he kind of stopped and he backed away and he looked at me and cused [sic] at me and he come at me a second time and as he came at me the second time I fired again; he turned at the last second he was comin' at me ... I never meant to kill anybody I just wanted him to quit beatin' on her and quit beatin' on me, that is all I wanted.

Record at 468–69. Holder intentionally pointed her gun at Westmoreland and fired two shots one of which killed him. The evidence did not warrant an instruction on reckless homicide, and the trial court did not err in refusing to give one. Because reckless homicide was the only included offense instruction offered, its proper rejection rendered the instruction defining "lesser included offense" unnecessary.

Finally, we focus on Holder's argument that the trial court erred in giving the following instruction tendered by the State and given as modified by the court: "A

person may not use force against another person and claim the defense of self defense if the attack, although occurring initially, has in fact ceased. The State of Indiana has the burden of proof beyond a reasonable doubt that the attack has ceased." Record at 179.

Holder argues on appeal, as she did at trial, that the evidence showing that Westmoreland ceased to attack her before she shot him is not sufficient to support the instruction. We disagree. The testimony of Brad and Lana Barnett permitted an inference that the attack was concluded.

We vacate the decision of the Court of Appeals and affirm the trial court.

DeBRULER, GIVAN, DICKSON and KRAHULIK, JJ., concur.