## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 01 2019, 6:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Daryl K. Henderson, Jr.
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Daryl K. Henderson, Jr.,
*Appellant-Petitioner,*

v.

State of Indiana,
*Appellee-Respondent.*

April 1, 2019

Court of Appeals Case No.
45A03-1712-PC-2998

Appeal from the Lake Superior Court

The Honorable Samuel L. Cappas, Judge

Trial Court Cause No.
45G04-1509-PC-9

**Najam, Judge.**

## Statement of the Case

Daryl K. Henderson, Jr. appeals the post-conviction court's denial of his petition for post-conviction relief. Henderson raises a single issue for our review, namely, whether the post-conviction court erred when it denied his petition because he was denied the effective assistance of trial counsel. We affirm.

## Facts and Procedural History

The facts underlying Henderson's convictions were stated by this Court on direct appeal:

> On August 2, 2012, Henderson spent his afternoon drinking alcohol at his home in Gary, Indiana. At around 4:00 p.m., Henderson decided to drive to Rico's Pizza to get pizza for his family. At the time, Henderson's driver's license had been suspended. Henderson also carried a small handgun on his person despite the fact that his permit to carry a handgun had since expired. While driving to Rico's Pizza, Henderson was drinking from a can of beer. When he arrived at Rico's Pizza, Henderson entered the restaurant holding his can of beer and placed his order. While waiting for his order, he bumped into Lawrence McIntosh (McIntosh), with whom he had no prior acquaintance. They engaged in small talk when Henderson stated that he wanted to buy alcohol, and McIntosh informed Henderson that there was a liquor store next door. Shortly thereafter, both men exited Rico's Pizza and entered Party Liquors. As they walked in, the cashier at Party Liquors told Henderson that he could not serve him if he had an open can of beer. Henderson turned around, walked out, placed his empty can of beer on the pavement, and walked back in. While Henderson was outside tossing his can of beer, McIntosh told the cashier that he wished Henderson would leave him alone.

Henderson reentered Party Liquors, but since the cashier refused to sell him alcohol, he requested McIntosh to purchase alcohol on his behalf. The Party Liquors' surveillance video showed McIntosh paying for what looked like a six-pack of beer and leaving Henderson inside the liquor store. It further showed McIntosh walking to his car, dropping off his six-pack of beer, and going back into Rico's Pizza. Also, it showed Henderson leaving Party Liquors and returning to Rico's Pizza to pick up his pizza.

After Henderson picked up his pizza, he saw McIntosh on his way out. Henderson approached McIntosh, and both men talked briefly. A short while later, Henderson returned to Rico's Pizza to get a drink. When Henderson saw McIntosh seated inside the restaurant, he approached McIntosh and started circling him while making threatening hand gestures. That provoked McIntosh and prompted him to stand up to face Henderson. At that point, Henderson told McIntosh, "You want to act like you don't know me? . . . I got something for your ass when you come outside." (Transcript p. 153). McIntosh responded that he was tired of Henderson's "shit" and he told him to leave him alone and get his own beers. (Tr. p. 208). McIntosh then punched Henderson and a scuffle ensued. The fight did not last long because both men were ordered to go outside. Prior to the altercation, McIntosh had removed his t-shirt, but upon exiting Rico's Pizza, he began to put it back on. As soon as both men were outside, Henderson retrieved his handgun from his pocket, aimed it at McIntosh, and fired one shot at close range. Henderson fired two more shots at McIntosh as he was running away from him. Firing the shots, Henderson told McIntosh, "I told you I was gonna do this." (Tr. p. 237). McIntosh was hit twice: in his jaw and chest, with the chest wound causing his death. Meanwhile, Henderson ran toward his vehicle, fired two more random shots, and reloaded his gun.

A police officer who was on patrol in the nearby area heard the gunshots and drove toward the direction of the shots. When he

arrived at Rico's Pizza, he saw people pointing toward Henderson's vehicle and he immediately activated his emergency lights. Upon seeing the officer, Henderson fired one more shot in the officer's direction and fled from the scene. A high speed chase through the city ensued. Henderson's vehicle eventually came to a stop when it hit a stop sign. Henderson attempted to flee on foot and hid behind some bushes but was quickly apprehended by the officers. Although he resisted arrest, the officers were able to subdue him. Upon searching Henderson's vehicle, the officers found a small handgun on the floorboard. Because Henderson complained of injuries, he was taken to the hospital, for treatment. Henderson became unruly at the hospital and he had to be restrained. The following day, Gary police detectives interviewed Henderson after advising him of his *Miranda* rights. Henderson narrated four different versions of the events leading to the shooting.

On August 4, 2012, the State filed an Information charging Henderson with one Count of murder, and one Count of resisting law enforcement, [as] a Class D Felony. However, on November 8, 2012, and subsequently on October 16, 2013, the State amended the Information to reflect the following charges: Count III, criminal recklessness, a Class D felony; Count IV, resisting law enforcement, a Class A misdemeanor; Count V, resisting law enforcement, a Class A misdemeanor; Count VI, carrying a handgun without a license, a Class A misdemeanor; Count VII, driving while suspended, a Class A misdemeanor; Count VIII, no valid driver's license, a Class C infraction; Count IX, speeding, a Class C infraction; Counts X-XXVI, disregarding automatic signals and disregarding stop signs, all Class C infractions.

Henderson's jury trial was conducted on November 18, 2013 through November 22, 2013. At trial, Henderson testified that he only shot at McIntosh in self-defense because he believed that McIntosh was reaching for something inside his shirt, and he feared for his life. Toward the end of the trial, Henderson tendered jury instructions on voluntary manslaughter and

reckless homicide. The trial court declined to tender the voluntary manslaughter instruction but tendered the reckless homicide instruction. At the close of the evidence, the jury found Henderson guilty of murder and all other Counts except for one Count of criminal recklessness, a Class D felony; one Count of resisting law enforcement, a Class A misdemeanor; and three of the traffic infractions.

On December 19, 2013, the trial court held Henderson's sentencing hearing and sentenced Henderson to consecutive sentences of fifty-three years for the murder conviction, and fourteen months for one Count of resisting law enforcement, [as] a Class D felony. In addition, the trial court sentenced Henderson to concurrent sentences of nine months each for one Count of resisting law enforcement, a Class A misdemeanor, and one Count for carrying a handgun without a license, a Class A misdemeanor. Henderson also received a ninety-day sentence in the Lake County Jail for driving while suspended.

*Henderson v. State*, No. 45A03-1401-CR-34, 2014 WL 5089297, at *1-2 (Ind. Ct. App. Oct. 9, 2014), *trans. denied* ("*Henderson I*").

[3] Henderson raised a single issue on direct appeal, namely, whether the trial court abused its discretion when it did not instruct the jury on voluntary manslaughter. The trial court had declined to give the proffered instruction after finding no serious evidentiary dispute regarding whether Henderson had acted under sudden heat, and we affirmed Henderson's convictions on appeal. *Id.* at *4-5.

[4] On September 24, 2015, Henderson filed a petition for post-conviction relief, and he filed an amended petition on October 11, 2016, alleging ineffective

assistance of trial counsel.  On December 4, 2017, after a hearing, the post-conviction court denied Henderson's petition.  This appeal ensued.

# Discussion and Decision

[5]     Henderson contends that he was denied the effective assistance of trial counsel.[1]
Our standard of review in such appeals is clear:

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* at 274.  In order to prevail on an appeal from the denial of post-conviction relief, a petitioner must show that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993).  Further, the post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6).  Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

*Humphrey v. State*, 73 N.E.3d 677, 681-82 (Ind. 2017).  Further:

---

[1] To the extent that Henderson, *pro se*, purports to assert as a separate issue that "the post-conviction court violated substantive due process in denying post-conviction relief," the argument in support of that contention is merely a reiteration of his contentions in support of his ineffective assistance of counsel claim. Appellant's Br. at 12.

When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052).

*Id.* at 682.

Henderson contends that his trial counsel rendered ineffective assistance because his counsel did not investigate whether McIntosh was a gang member, which would have supported Henderson's self-defense claim, and because his counsel did not depose three of the State's witnesses prior to trial. We address each argument in turn.

### Failure to Investigate Victim's Alleged Gang Affiliation

Henderson maintains that his trial counsel was ineffective because he did not investigate McIntosh's background to determine whether he had been a member of a gang. Henderson asserts that "Henderson's perceptions of [McIntosh] as a deadly threat based on his gang affiliation" would have supported his self-defense claim at trial. Appellant's Br. at 9.

[8] However, as the post-conviction court stated, while evidence of a murder victim's prior bad acts is admissible to prove that the victim had a violent character which frightened the defendant, a defendant offering such evidence "must present evidence that he knew about the specific bad acts in question before he killed the victim." Appellant's App. Vol. III at 8 (citing *Holder v. State*, 571 N.E.2d 1250, 1254 (Ind. 1991)). In support of his amended petition for post-conviction relief, Henderson did not present any evidence that McIntosh was a gang member. Moreover, Henderson did not present any evidence that he knew at the time of the murder that McIntosh was a gang member.[2] Accordingly, Henderson has not shown that his trial counsel's performance was deficient when he did not investigate whether McIntosh was a gang member.

### Failure to Depose Witnesses

[9] Henderson also contends that his trial counsel was ineffective because he did not depose three of the State's witnesses, namely, Juanita Hernandez, Lisa Shinkle, and Vanessa Thomas. Henderson maintains that "counsel's failure to depose the witnesses undermined counsel's ability to cross-examine [the] witnesses and to present evidence in support of the self-defense theory." Appellant's Br. at 11. We cannot agree.

---

[2] At the hearing on his petition, Henderson asserted that McIntosh had "gang-related tattoos" on his body, and Henderson asked his trial counsel why he did not seek to introduce those tattoos into evidence. Tr. at 36. But, other than his self-serving testimony, which the trial court had discretion to find not credible, Henderson did not present evidence that McIntosh's tattoos reflected his membership in a gang or otherwise suggested that McIntosh was a violent person. Henderson has not sustained his burden to show that McIntosh's tattoos were relevant to his self-defense claim.

[10] Our Supreme Court has held that a counsel's failure to interview or depose State's witnesses does not, in itself, constitute ineffective assistance of counsel. *Williams v. State*, 724 N.E.2d 1070, 1076 (Ind. 2000). Henderson must identify what additional information would have been discovered and how he was prejudiced by the absence of this information. *See id.* On appeal, other than pointing out a single inconsistency in Hernandez' testimony, which his trial counsel had pointed out during his cross-examination of her at trial, Henderson does not explain what deposing the three witnesses prior to trial would have accomplished. We cannot say that he was denied the effective assistance of trial counsel.

[11] In sum, Henderson has not shown that his trial counsel's performance was deficient. Neither has Henderson shown that, but for counsel's alleged errors, the result of the proceeding would have been different. The post-conviction court did not err when it denied his amended petition for post-conviction relief.

[12] Affirmed.

Baker, J., and Robb, J., concur.